**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES<br>RETIREMENT SYSTEM,<br>277 East Town Street<br>Columbus, Ohio 43215<br><br>    and<br><br>STATE TEACHERS RETIREMENT<br>SYSTEM OF OHIO,<br>275 East Broad Street<br>Columbus, Ohio 43215<br><br>                    Plaintiffs,<br><br>          v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY,<br>1700 G Street, N.W.,<br>Washington, D.C. 20052<br><br>    and<br><br>EDWARD DEMARCO,<br>in His Official Capacity as Acting<br>Director of the Federal Housing<br>Finance Agency,<br>1700 G Street, N.W.,<br>Washington, D.C. 20052<br><br>                    Defendants. | Civil Action No. |

**COMPLAINT**

Plaintiffs Ohio Public Employees Retirement System and State Teachers Retirement System of Ohio bring this Complaint against Defendants Federal Housing Finance Agency and its Acting Director, Edward DeMarco, in his official capacity.  Upon knowledge as to their own acts, and upon information and belief as to all other matters, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1.      The Federal National Mortgage Association—popularly known as "Fannie Mae"—is a government-sponsored enterprise that buys and guarantees residential mortgage loans and mortgage-related securities.  From at least 2001 through 2004, Fannie Mae misled its investors and the public by issuing materially false and misleading financial reports and other statements that artificially inflated the price of Fannie Mae securities, costing investors billions of dollars in losses when the truth about Fannie Mae's fraud emerged.  Plaintiffs in this action are defrauded pension-fund investors who are the court-appointed lead plaintiffs in a federal securities fraud class action against Fannie Mae and three of its former officers, currently pending in this Court before the Honorable Judge Richard Leon.

2.      On June 14, 2011, Fannie Mae's conservator, defendant Federal Housing Finance Agency ("FHFA"), promulgated a rule designed to single out securities fraud victims and restrict their ability to recover their losses from Fannie Mae, regardless of the merits of their claims. That rule subordinates the claims of securities fraud victims to the lowest priority—on par with mere equity interests—while Fannie Mae is in receivership.  12 C.F.R. § 1237.9(a).  It also prohibits the payment of securities fraud claims—even claims reduced to judgment and court-approved settlements—while Fannie Mae is in conservatorship, absent the FHFA's consent.  *Id.* §§ 1237.12(a), .13(a).

3.      The FHFA's rule must be set aside in its entirety because the agency's Acting Director lacked authority to promulgate it under the Appointments Clause, U.S. Const. art. II, § 2.  The challenged provisions are also contrary to the governing statute and longstanding Supreme Court precedent, both of which require securities fraud victims to be treated on par with other creditors in receivership.  The provisions also violate the Takings Clause and the Due Process Clause.

4.     Accordingly, through this action under the Administrative Procedure Act and the U.S. Constitution, Plaintiffs seek a declaratory judgment that (1) the FHFA's rule is unlawful in its entirety under the Appointments Clause; (2) the rule's provision subordinating securities fraud claims in receivership is unlawful; and (3) the rule's provisions prohibiting payment of securities fraud claims in conservatorship are unlawful.   Plaintiffs also seek an injunction prohibiting enforcement of the rule.

## PARTIES

5.     Plaintiff Ohio Public Employees Retirement System is a public pension fund based in Columbus, Ohio.  It provides retirement, disability, and survivor benefit programs for thousands of public employees throughout the State.  Serving nearly 954,000 members, and with assets of more than $75 billion as of December 31, 2010, it is the largest state pension fund in Ohio and the twelfth largest public retirement system in the United States.

6.     Plaintiff State Teachers Retirement System of Ohio is also a public pension fund based in Columbus, Ohio.  It serves nearly 470,000 active, inactive, and retired public educators in Ohio, with investment assets of $58.8 billion as of June 30, 2010.

7.     Defendant Federal Housing Finance Agency ("FHFA") was established as an independent agency of the United States government by the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654.  The FHFA currently acts as conservator of Fannie Mae.  It maintains its headquarters at 1700 G Street, N.W., Washington, D.C.

8.     Defendant Edward DeMarco is currently Acting Director of the FHFA.  President Obama designated Mr. DeMarco Acting Director on August 25, 2009, effective September 1, 2009, without Senate confirmation.  Mr. DeMarco has now served in that "acting" capacity for over 23 months, spanning three sessions of Congress.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises

under the Constitution and laws of the United States.

10.     This Court has personal jurisdiction over Defendants because they are domiciled in this

district and/or engaged in the acts at issue in this district.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because this is a civil

action against an agency of the United States and a purported officer of that agency acting in his

official capacity, and a substantial part of the events or omissions giving rise to the claim

occurred in this district.

## THE FRAUD AT FANNIE MAE AND THE RESULTING LAWSUIT

12.     Plaintiffs in this case are Ohio state pension funds that invested in Fannie Mae's common

stock.  They have been appointed lead plaintiffs in a securities fraud class action currently

pending in this Court, captioned *In re Fannie Mae Securities Litigation*, Consol. Civ. No. 1:04-

cv-01639 (D.D.C.) (the "Securities Class Action").  In that case, originally filed in September

2004, the court certified a class consisting of certain Fannie Mae investors from April 2001

through December 2004.  The class includes public and private pension funds representing more

than 30 million pensioners and other individual investors.

13.     In the Securities Class Action, Plaintiffs allege that Fannie Mae and three of its former

senior officers violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5

promulgated thereunder.  The details of Fannie Mae's fraud are set out in the operative complaint

in that case and are merely summarized here.

14.     Fannie Mae is a publicly traded, government-sponsored enterprise chartered by Congress.

Its mission is to provide liquidity, stability, and affordability to the U.S. housing and mortgage

4

markets.  It buys and guarantees residential mortgage loans and mortgage-related securities, which it finances by issuing mortgage-related securities, debt, and equity.  For many years, Fannie Mae's common stock traded on the New York Stock Exchange under the ticker symbol "FNM."

15.     Like other publicly traded companies, Fannie Mae routinely issues financial reports and other statements concerning its performance to the investing public.  As with most other publicly traded companies, a substantial part of the compensation of Fannie Mae's senior officers was tied directly to the company's stock price.

16.     For several years until late 2004, Fannie Mae, through its senior officers, issued materially false and misleading financial reports and other statements that artificially inflated its stock price.  Those false statements misled investors into believing, among other things, that Fannie Mae (1) had accounting policies and practices and financial statements that conformed to generally accepted accounting principles ("GAAP"); (2) was a conservative, stable investment with little or no earnings volatility; (3) had a capital structure adequate to meet regulatory requirements and business needs; (4) had steady quarter-over-quarter earnings growth through the use of properly reported financial transactions, even in times of market and interest rate volatility; and (5) had effective internal controls and transparent disclosure policies and procedures.

17.     Those statements were false.  Unbeknownst to investors, Fannie Mae materially misstated its reported earnings during the class period in order to increase its senior officers' compensation.  Over thirty of Fannie Mae's accounting policies and practices—nearly every major accounting standard applicable to its mortgage-financing business—violated GAAP.

Fannie Mae tolerated weak or non-existent internal controls in order to overstate its reported earnings, while creating the illusion that its earnings were less volatile than they actually were.

18.     Fannie Mae's misconduct was investigated by the Department of Justice and Fannie Mae's two government regulators—the Securities and Exchange Commission ("SEC") and the Office of Federal Housing Enterprise Oversight ("OFHEO").

19.     In September 2004, OFHEO released a report citing "concerns regarding the validity of previously reported financial results, the adequacy of regulatory capital, the quality of management supervision, and the overall safety and soundness" of Fannie Mae.  In December 2004, the SEC's Office of the Chief Accountant determined that Fannie Mae had violated accounting standards that Fannie Mae had designated as "critical" or "significant" to its business. Shortly thereafter, Fannie Mae's CEO and CFO both left the company.

20.     In May 2006, OFHEO produced a final, lengthy report finding that Fannie Mae had "deliberately and intentionally manipulat[ed] accounting to hit earnings targets."

21.     In December 2006, Fannie Mae restated its financial results, revising its accounting under virtually every key accounting policy affecting its business.  The company admitted that its "misapplications of GAAP resulted in material modifications to [its] financial statements."  The restatement resulted in a reduction in retained earnings of $6.3 billion through June 30, 2004, and has been described as the largest financial restatement in U.S. corporate history.

22.     Following its investigation, the SEC filed a securities fraud lawsuit against Fannie Mae, alleging that the company had violated Section 10(b) of the Securities Exchange Act based on the same misconduct Plaintiffs alleged in the Securities Class Action.  In May 2006, Fannie Mae paid the SEC a civil money penalty of $350 million to settle those claims.  OFHEO also obtained a $50 million settlement from Fannie Mae as well as settlements valued at over $30 million from

three of Fannie Mae's senior officers.  To preserve the "deterrent effect" of the civil money penalty paid to the SEC, the SEC consent order expressly prohibits Fannie Mae from using any part of the penalty as a setoff in any civil lawsuits.

23.     Fannie Mae's Board of Directors commissioned and paid former Senator Warren B. Rudman to head an independent investigation of OFHEO's findings.  Senator Rudman's 616-page report, publicly released in February 2006 and immediately adopted by Fannie Mae, found that "management's accounting practices in virtually all of the areas that we reviewed were not consistent with GAAP, and, in many instances, management was aware of the departures from GAAP."

24.     When the fraud was revealed and Fannie Mae's true financial condition exposed to the public, the company's stock price dropped sharply.  The class members in the Securities Class Action suffered billions of dollars in losses as a result of Fannie Mae's fraud.  Plaintiffs in this case in particular—two Ohio state pension funds—lost millions of dollars as a result of Fannie Mae's fraud.

25.     On November 19, 2004, Plaintiffs filed suit against Fannie Mae and its senior officers in the U.S. District Court for the Southern District of Ohio.  *Ohio Pub. Employees Ret. Sys., et al. v. Fannie Mae, et al.*, No. 2:04-cv-01106 (S.D. Ohio).  Claims arising out of Fannie Mae's fraud were subsequently consolidated in this Court as *In re Fannie Mae Securities Litigation*, Consol. Civ. No. 1:04-cv-01639 (D.D.C.).  Plaintiffs filed a complaint in that consolidated case on March 4, 2005, an amended complaint on April 17, 2006, and a second amended consolidated class action complaint on August 14, 2006.  That action remains pending.  Over 67 million pages of documents have been produced; 123 fact depositions and 35 expert depositions have been taken; and summary judgment motions have been filed and are currently being briefed.

## THE HOUSING AND ECONOMIC RECOVERY ACT

26.     The financial weaknesses concealed by Fannie Mae's fraud convinced Congress of the need to reform oversight of the company.  To that end, as part of the Housing and Economic Recovery Act of 2008 (the "Act"), Pub. L. No. 110-289, 122 Stat. 2654, Congress established the Federal Housing Finance Agency ("FHFA") to supervise Fannie Mae, its companion enterprise the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Home Loan Banks.  Congress directed the FHFA to promote the safety and soundness of the institutions, support housing finance and affordable housing, and support a stable and liquid mortgage market.

27.     Congress structured the FHFA as an independent agency.  It provided that the agency would be headed by a Director appointed by the President, by and with the advice and consent of the Senate.  12 U.S.C. § 4512(b)(1).  The Director serves for a five-year term, subject only to for-cause removal by the President.  Where there is a vacancy in the office, the statute authorizes the President to "designate" an Acting Director.  *Id.* § 4512(f).

28.     James Lockhart was the first official to run the FHFA.  He obtained that position pursuant to 12 U.S.C. § 4512(b)(5), a transitional provision that designated OFHEO's Director as the first FHFA Director.  Mr. Lockhart was never confirmed for that position by the Senate.

29.     After Mr. Lockhart resigned, on August 25, 2009, President Obama designated Defendant Edward DeMarco, former Deputy Director and Chief Operating Officer of OFHEO, as Acting Director of the FHFA, effective September 1, 2009.  Mr. DeMarco has never been confirmed by the Senate either.

30.     The Act authorizes the FHFA to place Fannie Mae and Freddie Mac in conservatorship or receivership, and to act as conservator or receiver for the enterprises.  12 U.S.C. § 4617(a)(1).  As conservator, the agency is supposed to take steps to put the regulated entity in a sound and

solvent condition so it can carry on its business, and to preserve and conserve its assets and property.   As receiver, the agency places the regulated entity in liquidation and proceeds to realize and distribute its assets among those with claims against the entity.

31.      The Act specifies the priority of claims in receivership.   Specifically, it states:

> Unsecured claims against a regulated entity, or the receiver therefor, . . . *shall* have priority in the following order:
>
> (A) Administrative expenses of the receiver.
>
> (B) Any other general or senior liability of the regulated entity (which is not a liability described under subparagraph (C) or (D)).
>
> (C) Any obligation subordinated to general creditors (which is not an obligation described under subparagraph (D)).
>
> (D) Any obligation to shareholders or members arising as a result of their status as shareholder or members.

12 U.S.C. § 4617(c)(1) (emphasis added).

32.      The Act's priority scheme thus clearly distinguishes between creditor claims (subsection (B)) and mere equity interests (subsection (D)).   Nowhere does the Act provide that defrauded investors with valid securities fraud claims against the enterprise are to be treated as mere equity interests rather than general creditors.

33.      Nor does the Act give the FHFA authority to single out securities fraud claims for non-payment while Fannie Mae is in conservatorship.   While the Act specifies a priority scheme for claims in receivership, it contains no comparable priority scheme or other provision authorizing selective non-payment of debts in conservatorship.   To the contrary, the Act contemplates that an entity in conservatorship will continue to carry on its business as a going concern and pay its bills as they become due.

34.    Pursuant to its authority under the Act, the FHFA placed Fannie Mae and Freddie Mac in conservatorship on September 6, 2008.  Both entities remain in conservatorship to this date.

### THE FHFA'S SUBORDINATION AND NON-PAYMENT RULE

35.    The Housing and Economic Recovery Act authorizes the FHFA to "prescribe such regulations as the Agency determines to be appropriate regarding the conduct of conservatorships and receiverships."  12 U.S.C. § 4617(b)(1).

36.    Even though the FHFA's predecessor agency had obtained multimillion-dollar settlements from Fannie Mae and its senior officers as a result of Fannie Mae's fraud, the FHFA decided to use its rulemaking authority to attempt to restrict the ability of securities fraud victims to recover from the company.

37.    Accordingly, on July 9, 2010, almost two years after placing Fannie Mae and Freddie Mac in conservatorship, the FHFA proposed a rule that would sharply limit the ability of defrauded stock purchasers to recover from the entities.  *See Conservatorship and Receivership*, 75 Fed. Reg. 39,462 (July 9, 2010).  The proposed rule provided that, rather than being treated on par with other creditor and tort claims, securities fraud claims would be subordinated to the lowest level of priority in receivership, on par with ordinary equity interests.  To ensure the effectiveness of that priority scheme, the proposed rule also prohibited the regulated entities from paying securities fraud claims while in conservatorship, absent the FHFA's consent.

38.    Because the proposed rule unreasonably and unlawfully singled out securities fraud victims in a thinly veiled attempt to thwart Plaintiffs' claims, Plaintiffs and their representatives submitted written comments opposing the proposed rule on substantially the grounds set forth in this Complaint (attached as Exhibits A through C).  Many Members of Congress—including those involved in the passage of the Housing and Economic Recovery Act—also submitted

comments opposing the proposed rule (attached as Exhibits D through F), as did a number of labor organizations with pension funds (see, for example, Exhibit G).

39.     Despite that opposition, on June 14, 2011, almost a year after the FHFA proposed its rule, the agency adopted the rule without any material modification to the provisions at issue.  That final rule was then published in the Federal Register on June 20, 2011, and took effect on July 20, 2011.  *See Conservatorship and Receivership*, 76 Fed. Reg. 35,724 (June 20, 2011).

40.     At the time Mr. DeMarco authorized and signed that rule on behalf of the FHFA, he had been serving for almost 22 months after the President installed him as the FHFA's Acting Director without Senate confirmation.

41.     Contrary to the statutory priority scheme, the FHFA's rule subordinates securities fraud claims to the lowest level of priority in receivership, on par with ordinary equity interests.

42.     Specifically, the rule provides that the receiver will grant priority to unsecured claims against a regulated entity in the following order:

> (1) Administrative expenses of the receiver (or an immediately preceding conservator).
>
> (2) Any other general or senior liability of the regulated entity (that is not a liability described under paragraph (a)(3) or (a)(4) of this section).
>
> (3) Any obligation subordinated to general creditors (that is not an obligation described under paragraph (a)(4) of this section).
>
> (4) Any claim by current or former shareholders or members arising as a result of their current or former status as shareholders or members, ***including, without limitation, any securities litigation claim***.  Within this priority level, the receiver shall recognize the priorities of shareholder claims inter se, such as that preferred shareholder claims are prior to common shareholder claims. . . .

12 C.F.R. § 1237.9(a) (emphasis added).

43.     Similarly, even though the statutory priority scheme applies only in receivership and the Act contains no provision authorizing selective non-payment of debts in conservatorship, the

FHFA's rule purports to prohibit payment of securities fraud claims during conservatorship absent the FHFA's consent—even claims reduced to judgment and court-approved settlements.

44.     Specifically, the rule provides that "[t]he Agency, as conservator, will not pay a Securities Litigation Claim against a regulated entity, except to the extent the Director determines is in the interest of the conservatorship."  12 C.F.R. § 1237.13(a).  It further provides that "a regulated entity shall make no capital distribution while in conservatorship" unless authorized by the FHFA's Director, 12 C.F.R. § 1237.12(a), and defines "capital distribution" to include payments on securities litigation claims, *id.* § 1229.13(3).

45.     Thus, under the FHFA's rule, Plaintiffs' claims against Fannie Mae are placed in a special category and subordinated to every other type of debt.  For example, if Fannie Mae's officers—the very individuals responsible for the fraud—sued the company to recover their attorney's fees, their claims would receive priority over Plaintiffs' valid securities fraud claims.

### THE INVALIDITY OF THE FHFA'S RULE

46.     The FHFA's rule is invalid in its entirety because Mr. DeMarco lacked authority to promulgate it under the Appointments Clause, U.S. Const. art. II, § 2, and the Housing and Economic Recovery Act.  Moreover, the rule's provisions subordinating securities litigation claims to the lowest priority in receivership (the "subordination provision") and prohibiting payment of such claims in conservatorship (the "non-payment provisions") are invalid because they are arbitrary and capricious, an abuse of discretion, not in accordance with law, contrary to constitutional right, and in excess of the agency's statutory authority.

### Appointments Clause Violation

47.     The Appointments Clause requires principal officers of the United States to be appointed by the President with the advice and consent of the Senate.  U.S. Const. art. II, § 2.

48.     Since his designation as Acting Director more than 23 months ago, Mr. DeMarco has exercised extraordinary authority subject to the supervision of no one other than the President. His duties, length of tenure, and independence from supervision render him a principal officer for purposes of the Appointments Clause.

49.     Contrary to the Appointments Clause, however, Mr. DeMarco has never been confirmed by the Senate.

50.     Although the Housing and Economic Recovery Act purports to authorize the President, acting alone, to designate an "Acting Director" when there is a vacancy in the office, the Appointments Clause permits such "acting" appointments (if at all) only for brief periods of time and only in emergency situations.  Mr. DeMarco has now served as "Acting Director" for more than 23 months, far exceeding the constitutional limit on service as an "acting" officer.

51.     Mr. DeMarco thus holds office in violation of the Appointments Clause, and lacked authority to promulgate the FHFA's rule.

52.     Mr. DeMarco's appointment also violated the Housing and Economic Recovery Act. That Act authorizes the President to designate an Acting Director only after a validly appointed Director previously held office.  But the FHFA head who preceded Mr. DeMarco was not confirmed for that position by the Senate either.  Because Mr. DeMarco's predecessor was not validly appointed, the President lacked authority to designate Mr. DeMarco Acting Director.

### Invalidity of the Subordination Provision

53.     Even apart from the FHFA's lack of authority to promulgate the rule, the provision subordinating securities fraud claims in receivership, 12 C.F.R. § 1237.9(a), is invalid on a number of grounds.

54.     The subordination provision is contrary to the express terms of the statute, which requires securities fraud claims to be treated on par with other creditor claims, not subordinated to the lowest level with equity.

55.     In *Oppenheimer v. Harriman National Bank & Trust Co.*, 301 U.S. 206 (1937), the Supreme Court held that claims of securities fraud victims must be treated on par with other creditor claims in receivership, not as mere equity interests, absent statutory language to the contrary.   Nothing in the Housing and Economic Recovery Act authorizes the FHFA to subordinate securities fraud victims below the priority of other general creditors and treat them as mere equity interests.   The FHFA's subordination provision defies the Supreme Court's express holding in *Oppenheimer*.

56.     The subordination provision also defies Congress's intent as reflected in the legislative history of the statute on which the Housing and Economic Recovery Act was modeled—the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183.   When Congress enacted that earlier statute, it specifically rejected a proposal to subordinate shareholders' claims against directors and officers of failed financial institutions to the claims of the Federal Deposit Insurance Corporation, expressing concern that subordination would be unfair to investors and contrary to federal fraud enforcement policies.

57.     By modeling the Housing and Economic Recovery Act on that earlier statute, Congress intended to continue that policy of refusing to subordinate securities fraud claims.   The subordination provision of the FHFA's rule defies that plain congressional intent.

58.     Finally, the subordination provision is unconstitutional.   It violates the Takings Clause and Due Process Clause by expropriating property interests without just compensation and retroactively eliminating already accrued causes of action.

## Invalidity of the Non-Payment Provisions

59.     The provisions of the FHFA's rule prohibiting payment of securities fraud claims in conservatorship, 12 C.F.R. §§ 1237.12(a), .13(a), are also unlawful.

60.     The FHFA justified those non-payment provisions as necessary to ensure the effectiveness of the provision subordinating securities fraud claims in receivership.  To the extent the subordination provision is invalid, the non-payment provisions are necessarily invalid as well.

61.     The non-payment provisions are also independently invalid because they exceed the FHFA's statutory authority.  The Act equips the agency with only certain enumerated powers as conservator, such as authority to "operate the regulated entity with all the powers of the shareholders, the directors, and the officers of the regulated entity" and to "preserve and conserve the assets and property of the regulated entity."  12 U.S.C. § 4617(b)(2)(B)(i), (D)(ii). No provision of the Act authorizes the agency to refuse to pay valid claims—much less judgments and court-approved settlements—during conservatorship.

62.     Other provisions of the Act clearly reflect Congress's intent that a regulated entity will continue to pay its debts in conservatorship.  For example, while the Act authorizes regulated entities to refuse to pay certain claims in receivership by establishing a priority scheme for distribution where claims exceed assets available, it contains no comparable priority scheme for conservatorship.  Congress provided no such scheme because it contemplated that regulated entities would continue to pay their debts in conservatorship.

63.     Similarly, while the Act bars creditors from avoiding the statutory priority scheme by attaching a regulated entity's assets in receivership, 12 U.S.C. § 4617(b)(11)(C), it contains no

comparable provisions restricting execution in conservatorship.  That omission only makes sense if Congress contemplated that the entity would continue to pay its debts in conservatorship.

64.     Finally, the non-payment provisions are also unconstitutional.  They violate the Takings Clause and Due Process Clause by expropriating property interests without just compensation and retroactively eliminating already accrued causes of action.  They also violate separation-of-powers principles by purporting to vest an officer of the Executive Branch with discretion either to satisfy or to repudiate valid federal court judgments.

## PLAINTIFFS' INJURY AND STANDING

65.     The FHFA's final rule constitutes a final agency action reviewable in this Court under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

66.     Plaintiffs are aggrieved by the FHFA's rule.  Plaintiffs have asserted valid securities litigation claims against Fannie Mae.  The rule's non-payment provisions inflict present injury-in-fact on Plaintiffs by prohibiting Fannie Mae from making any payment on those claims (whether in settlement or otherwise) while in conservatorship, absent the Director's consent, which has not been given.

67.     The rule's subordination provision threatens imminent future harm to Plaintiffs by threatening to subordinate their valid securities litigation claims to the lowest level of priority in receivership.  If Fannie Mae is placed in receivership, it is very likely that the entity's assets will not be sufficient to pay all claims.  Subordination would thus dramatically affect Plaintiffs' ability to recover any of their losses from Fannie Mae.

68.     The subordination provision is also inflicting present injury-in-fact on Plaintiffs because the FHFA relied on the subordination provision as its justification for the non-payment provisions, which currently harm Plaintiffs.

69.     Plaintiffs are further aggrieved because the FHFA's rule was imposed by an officer who serves in violation of the Appointments Clause, and because the payment of their claims is determined by that officer.

70.     The FHFA's final rule is fit for judicial review.  Plaintiffs' challenges to the rule concern whether the FHFA's head was serving in violation of the Appointments Clause and whether the challenged provisions of the rule are consistent with the statute, Supreme Court precedent, congressional intent, and the Constitution.  Those legal issues would not benefit from further factual development.

71.     Delaying judicial review will result in significant hardship for Plaintiffs.  The FHFA's rule currently precludes Fannie Mae from paying Plaintiffs' valid securities litigation claims, in settlement or otherwise.  Further, delay could result in Fannie Mae being unable to satisfy any judgments or settlements if placed in receivership.

## CLAIMS FOR RELIEF

### COUNT I

### DECLARATORY AND INJUNCTIVE RELIEF—VIOLATIONS OF APPOINTMENTS CLAUSE AND STATUTORY APPOINTMENT PROVISION

72.     Plaintiffs reassert and incorporate herein by reference the allegations contained in paragraphs 1-71 above, as though fully set forth herein.

73.     The FHFA's final rule is invalid in its entirety because it was promulgated by an agency whose head was not appointed in the manner required by the Appointments Clause, U.S. Const. art. II, § 2, and the Housing and Economic Recovery Act.

74.     The FHFA's rule has caused, and threatens to cause, injury for which Plaintiffs have no adequate remedy at law.

75.     Plaintiffs are entitled to a declaratory judgment that the FHFA's rule is invalid in its entirety because Mr. DeMarco is not validly serving in office, and an injunction against enforcement of the rule.

## COUNT II

### DECLARATORY AND INJUNCTIVE RELIEF—INVALIDITY OF SUBORDINATION PROVISION

76.     Plaintiffs reassert and incorporate herein by reference the allegations contained in paragraphs 1-75 above, as though fully set forth herein.

77.     The provision of the FHFA's final rule that subordinates valid securities litigation claims to the lowest level of priority in receivership, 12 C.F.R. § 1237.9(a), is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; and in excess of statutory jurisdiction, authority, or limitations, in violation of 5 U.S.C. § 706.

78.     The subordination provision has caused, and threatens to cause, injury for which Plaintiffs have no adequate remedy at law.

79.     Plaintiffs are entitled to a declaratory judgment that the subordination provision is invalid and an injunction against enforcement of the provision.

## COUNT III

### DECLARATORY AND INJUNCTIVE RELIEF—INVALIDITY OF NON-PAYMENT PROVISIONS

80.     Plaintiffs reassert and incorporate herein by reference the allegations contained in paragraphs 1-79 above, as though fully set forth herein.

81.     The provisions of the FHFA's final rule that prohibit Fannie Mae from paying any securities litigation claim while in conservatorship absent the FHFA's consent, 12 C.F.R.

§§ 1237.12(a), .13(a), are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; and in excess of statutory jurisdiction, authority, or limitations, in violation of 5 U.S.C. § 706.

82.    The non-payment provisions have caused, and threaten to cause, injury for which Plaintiffs have no adequate remedy at law.

83.    Plaintiffs are entitled to a declaratory judgment that the non-payment provisions are invalid and an injunction against enforcement of the provisions.

WHEREFORE, Plaintiffs request that this Court enter an order:

(a)    declaring unlawful, setting aside, and permanently enjoining enforcement of the FHFA's final rule published in the Federal Register on June 20, 2011, in its entirety, on the ground that Mr. DeMarco is not validly serving as Director of the FHFA;

(b)    declaring unlawful, setting aside, and permanently enjoining enforcement of that portion of the FHFA's final rule published in the Federal Register on June 20, 2011, that purports to subordinate securities litigation claims to the lowest priority level in receivership (12 C.F.R. § 1237.9(a));

(c)    declaring unlawful, setting aside, and permanently enjoining enforcement of those portions of the FHFA's final rule published in the Federal Register on June 20, 2011, that purport to prohibit Fannie Mae from paying securities litigation claims in conservatorship absent the FHFA's consent (12 C.F.R. §§ 1237.12(a), .13(a));

(d)    granting Plaintiffs their reasonable attorney's fees and costs under 28 U.S.C. § 2412; and

(e)    granting Plaintiffs such other and further relief as this Court deems just and proper.

Dated:  August 26, 2011

Respectfully submitted,

MICHAEL DeWINE
OHIO ATTORNEY GENERAL

Joseph T. Deters (*pro hac vice* pending)
W.B. Markovits (*pro hac vice* pending)
WAITE, SCHNEIDER, BAYLESS &
   CHESLEY CO., L.P.A.
One West Fourth Street
Cincinnati, Ohio  45202
(513) 621-0267 (telephone)
(513) 621-0262 (facsimile)

Jeffrey A. Lamken (D.C. Bar # 440547)
Robert K. Kry (D.C. Bar # 490545)
MOLO LAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)